Submitted on record and briefs December 11, 1986, affirmed on appeal and affirmed as modified on cross-appeal November 25, 1987, reconsideration denied April 22, petition for review pending 1988

KALMAN,
*Plaintiff,*

MARZINECK et al,
*Respondents,*

*and*

The NORTH WOODS ASSOCIATION et al,
*Respondents - Cross-Appellants,*

*v.*

CURRY et al,
*Defendants,*

*and*

BLOOM, MARANDAS & SLY,
*Appellant - Cross-Respondent.*

(A80-10-06115; CA A37700)

745 P2d 1232

John S. Marandas, Theodore S. Bloom and Bloom, Marandas & Sly, Portland, filed the briefs for appellant - cross-respondent.

Leonard H. Beasley, Portland, filed the brief for respondents - cross-appellants.

No appearance for respondent Paul Schulz.

No appearance for respondents M. M. Marzineck and Karla Marzineck.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Appellants, a partnership of lawyers, appeal from a judgment entered pursuant to ORCP 32N, which allows a trial court, ancillary to the resolution of a class action, to award attorney fees for the representation of the class. Respondent, the class representative, cross-appeals. We modify the judgment in only one respect.

On May 5, 1980, George Kalman retained the law firm of Bloom, Marandas & Sly (BMS) to represent the North Woods Association (NWA). Kalman was the president of the board of directors of NWA, a group of persons who hold long-term leases on property in a recreational development called "North Woods," located near Mt. St. Helens in Skamania County, Washington. Some of the lots have been improved with rustic cabins and some are unimproved. NWA initially retained BMS to investigate the possibility of pursuing legal action against the developers of North Woods, Water Front Recreation, Inc. (Water Front), its president Robert Curry and the governmental entities that sanctioned the development and marketing of the lots. NWA was dissatisfied with many aspects of North Woods, including inadequate winter access to the area, slow completion of the development and an inadequate water supply to the cabins. The parties executed a retainer agreement that provided that NWA would pay BMS $75 per hour for legal services rendered by BMS. On May 18, 1980, Mt. St. Helens erupted, cutting off access to North Woods; ash fallout damaged the cabins and diminished the value of the leaseholds. A series of lawsuits followed. BMS filed an action on behalf of NWA and the property lessees in North Woods as a class against Curry, Water Front, the State of Oregon and the federal government. The federal government removed the action against it to federal district court. NWA also brought an action against the State of Washington in Skamania County Superior Court.

As the litigation progressed, both BMS and NWA became concerned that the original retainer agreement was inadequate. Although BMS had estimated originally that the total fees would amount to approximately $60,000, most of that had already been incurred and there was no sign of a speedy resolution; in fact, the problems continued to grow

more complex. On April 29, 1982, Marandas drafted a "modified contingency agreement" and mailed it to the new president of NWA, Mr. Marzineck. That agreement provides, in part:

"Pursuant to past discussions between the board and our office, we have prepared the following proposal as a modification to the original retainer agreement now still in effect.

"Upon your signature being placed on a copy of this document, with its return to our office, the new arrangement shall become effective.

"The terms and conditions of employment and compensation would consist of the following:

"1. All accrued and unpaid attorney fees, including any credits previously given but which remain unpaid, would be paid immediately at 53.33% (40/75) of the actual charge. (Current amount of fees due through 4/15/82: $28,448.66 × .5333 = $15,171.67, amount due if modified contingency arrangement accepted.)

"2. Court and related costs advanced by attorneys would be reimbursed to attorneys at full value.

"3. Attorney fees accruing since 4/15/82 would be charged at the rate of $40.00 per hour, and the charge for paralegals would be at the rate of $25 per hour.

"4. *In addition to the above fees,* added attorney fees would be paid by The North Woods Association in the event of a recovery which benefits The North Woods Association, the homeowners or any portion thereof:

"(a) In the event of settlement at least 90 days prior to trial: 15% of any gross recovery if settlement is achieved within 180 days of the above date, with a 1% decrease for each three-month period that elapses thereafter; however, the minimum share shall be 10% of gross recovery.

"* * * * *

"5. In determining fees based upon percentage recoveries, a current value shall be reached on future payments, and the Association would satisfy said 'current value' amounts. If a current value cannot be derived due to the speculative nature of future events, the activities of the ten prior years shall be used as a basis for projection of future events. *Any other benefit, guarantee or recovery achieved but incapable of*

> *being ascertained by means of past activities, shall be
> subject to negotiation and if no resolution can be
> reached, payment shall be at a reasonable hourly rate
> of $75 per hour for efforts expended to achieve the
> particular benefit."* (Emphasis supplied.)

On June 16, Marzineck signed the new fee agreement on behalf of NWA.

After protracted negotiations, NWA and Water Front reached a settlement on May 24, 1984. As part of the settlement, rent payments from the lessees to Water Front were abated for two years. The rent abatement accounted for most of the money in the settlement fund, out of which BMS's fees were to be paid. Water Front agreed to pay NWA funds for use in improving docks and roads and installing a volcano eruption warning system. The leases, previously scheduled to expire in 2025, were extended to 2069. NWA took over enforcement of its own bylaws from Water Front, and Water Front agreed to pay it an annual fee for ten years for that purpose. In addition, NWA received some benefits that are dependent on future events: rent payments will be abated if Mt. St. Helens erupts again during the term of the leases and future rent adjustments are to be based on fluctuations in the consumer price index. The court certified the case as a class action, and NWA dismissed the actions in the Skamania County and federal courts.

After BMS and NWA were unable to agree on a reasonable fee,[1] BMS filed a petition for attorney fees, pursuant to ORCP 32N, the relevant portions of which provide:

"N(1)(a)    Attorney fees for representing a class are subject to control of the court.

"* * * * *

"N(1)(c)    If the prevailing class recovers a judgment that can be divided for the purpose, the court may order reasonable attorney fees and litigation expenses of the class to be paid from the recovery.

"* * * * *

"N(1)(e)    In determining the amount of attorney fees for a prevailing class the court shall consider the following factors:

---

[1] BMS suggested that the dispute be referred to arbitration by either a professional arbitrator, the Oregon State Bar or the trial court.

"N(1)(e)(i)    The time and effort expended by the attorney in the litigation, including the nature, extent, and quality of the services rendered;

"N(1)(e)(ii)    Results achieved and benefits conferred upon the class;

"N(1)(e)(iii) The magnitude, complexity, and uniqueness of the litigation;

"N(1)(e)(iv)  The contingent nature of success; and

"N(1)(e)(v)    Appropriate criteria in OR 2-106 [*sic*] of the Oregon Code of Professional Responsibility.[2]

"N(2)    Before a hearing under section C. of this rule or at any other time the court directs, the representative parties and the attorney for the representative parties shall file with the court, jointly or separately:

"N(2)(a)  A statement showing any amount paid or promised them by any person for the services rendered or to be rendered in connection with the action or for the costs and expenses of the litigation and the source of all of the amounts;

"N(2)(b)  A copy of any written agreement, or a summary of any oral agreement, between the representative parties and their attorney concerning financial arrangement or fees."

Each party submitted affidavits prepared by experts

---

[2] The reference to "OR 2-106" is apparently meant to refer to DR 2-106, the pertinent part of which provides:

"(A) A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee.

"(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent."

in support of their respective positions. The court heard argument, but no additional evidence was taken. Much of the dispute concerns the proper valuation of benefits received by NWA in the settlement. In order to calculate the contingent fee, the value of the benefits must be capable of determination. BMS claimed that the proper fee is $388,193.01, using the base hourly rate of $40 combined with a 10 percent contingent fee on benefits received by NWA.[3] NWA argues that the fee should be $86,560.50.

The trial court found that BMS had expended 1,625.2 hours of attorney time and 199.7 hours of law clerk time. It also found that only some of the benefits received by NWA were capable of valuation, as a result of which:

> "The sum of the benefits for which values can be assigned is $275,931. The contingent fee on that amount would be $27,593. The problem, of course, is the determination of the fee upon the remaining 'benefits' for which values cannot be calculated."

Because BMS's time records do not allocate time in a manner that would permit both a contingent fee based on the value of benefits and a fee based on an hourly rate for benefits that could not be valued, the court concluded that an hourly rate of $100 for attorneys' time and $50 for clerks' time was reasonable. On reconsideration, the court reduced the hourly rate for attorneys to $75, because it concluded that it had no authority to fix an hourly rate in excess of that provided in the modified agreement. It calculated the fee as follows:

> "[BMS] is awarded an attorney fee as follows:

> "Attorney hours
> (1,625.2 hours at $75 per hour) .......... $121,890.00
> Clerk hours (199.7 hours at $50 per hour) . 9,985.00
> Costs advanced ...................... 2,967.00
> SUBTOTAL ....................... $134,842.00
> Less Payments ..................... - 47,498.86
> NET AMOUNT .................... $ 87,343.14"

BMS filed a supplemental petition for fees incurred after the original petition was filed, for which the court awarded $1,425,

---

[3] BMS now claims that the proper fee is $392,881. It advances numerous alternative methods for calculating the correct fee, including various hourly rates coupled with a multiplier.

making the final award $136,267, less payments. Both parties appeal.

All of the trial court's findings of fact are supported by the record, and we are bound by them. It was not required to accept the opinions of BMS's experts on the value of certain benefits, even if there was no contrary expert opinion. The trial court was not persuaded by them and said so. We do not review *de novo*.

BMS contends that the trial court erred in concluding that it was bound by the hourly rate specified in the fee agreement, the court having found initially that $100 per hour was a reasonable hourly rate. Although attorney fees for representing a class are subject to the control of the court, ORCP 32N(1)(a), the fee agreement between the representative parties and their attorney must be considered. ORCP 32N(2)(b). This rule, like FRCP 23, is primarily designed to protect the interests of the class members, who are frequently widely dispersed geographically, individually may have a small financial stake in the action and may be poorly equipped to defend their interests against those of their attorneys when the fee is determined. *See Dunn v. H. K. Porter Co., Inc.,* 602 F2d 1105, 1109 (3rd Cir 1979). For those reasons, ORCP 32N(1)(e) lists factors to be considered by the court in determining the fee, all of which are particularly relevant in evaluating the reasonableness of a contingent fee payable out of a settlement fund.

■ Those factors are not preeminent here. The class representative, NWA, is an association comprised of the lessees in North Woods, virtually all of whom are also members of the class. All of the class members are known and were aware of the progress of this litigation. NWA is virtually synonymous with the class. Furthermore, the fee is not strictly contingent on success; BMS was to be paid at least $40 per hour, even if it was unsuccessful. Accordingly, there is no reason not to give effect to the fee agreement as it is written, and the trial court did not err in doing so.

■ The question remains whether the court applied the agreement properly. It awarded $75 per hour for all attorney time and credited NWA for amounts that it had already paid. BMS argues that the $75 rate is in lieu of a percentage contingent fee and that, therefore, it should be in addition to the $40 base rate, for a total fee of $115 per hour. We agree with

the trial court that the fee agreement means that, if the value of benefits achieved cannot be ascertained or resolved by negotiation, BMS shall be paid $75 per hour for its time, rather than $40 per hour. Because the trial court was correct on that point, it follows that there was no error in crediting NWA for payments that it had made on account.

■ Neither did the court err in not awarding a contingent fee based on 10 percent of the value of benefits that were ascertainable. Given the lack of any record as to the time devoted to the benefits that could not be evaluated, the court correctly concluded that there was no reasonable way to determine the balance of the fee if it were to apply the 10 percent contingent fee, as BMS contends that it should.

■ BMS also assigns error to the court's refusal to award interest on the attorney fees that were owed by NWA. The May 5, 1980, original fee agreement provided that, "unless the parties agree to the contrary, interest will accrue at the rate of 10 percent on balances more than 30 days past due." No interest was ever billed to NWA and no interest was claimed in the original petition in this proceeding. The modified agreement does not provide for interest. BMS waived any right that it might have had to demand interest.

■ BMS also assigns error to the court's refusal to award attorney fees and costs that it incurred in connection with this dispute over fees. Essentially, BMS argues that it is entitled to a "fee on fee." A party does not have a right to recover attorney fees from an opponent unless a contract or statute confers that right. *Shipler v. Van Raden,* 288 Or 735, 608 P2d 1162 (1980). The original fee agreement provides:

> "[I]n the event it is necessary for either party to place this agreement in the hands of an attorney for collection or for defense against collection, it is agreed that reasonable charges are to be paid a successful litigant at the trial and appeal levels."

The modified agreement does not mention attorney fees in that context. The petition filed by BMS for award of attorney fees under ORCP 32 is ancillary to the class action and is not an action "for collection." Because the court did not err in giving effect to the fee agreement as written, it also did not err in denying attorney fees.

■      NWA cross-appeals, asserting that the court erred in four respects. First, it argues that the court erred in awarding attorney fees for the actions in the federal district and Washington state courts over which it had no jurisdiction. The trial court found that those two lawsuits were directed at obtaining the relief sought in this case. That finding is supported by the record, and there was no error in including the time devoted to those actions (20 percent of the total) in calculating the fees. *See* ORCP 32N(1)(e)(ii)-(iii).

■      NWA also assigns error to the court's award of $50 per hour for the services of law clerks. The court found that the clerks were law school graduates and that BMS expended 199.7 hours of clerk time on the case. The modified fee agreement provided for clerk time to be billed at $25 per hour; however, all of the work performed by the clerks was done in 1980 to 1982, before the execution of the modified agreement. The original fee agreement does not contain a provision for the billing of clerk time, but the petition for attorney fees filed by BMS states that law clerk time was being billed to NWA at $40 per hour. We find nothing in the record to support the award of $50 per hour for clerks, and conclude that that portion of the fee should be reduced to $40 per hour for 199.7 hours. That modification results in a reduction of the net judgment from $88,768.14 to $86,771.14.

■      NWA assigns error to the court's refusal to include a payment of $11,517.14 as a credit against the total amount owed to BMS. In its original decision, it gave NWA a credit of $59,016, representing the total amount that NWA had paid for attorney services. On reconsideration, it found that part of that amount, $11,517.14, had been paid for general legal services which were not related to the class action. The record supports that finding. Therefore, the court was correct in concluding that NWA was entitled to a credit of $47,498.86, the amount derived by subtracting $11,517.14 from $59,016.

■      Finally, NWA assigns error to the trial court's award of fees to the extent that the award exceeds $100,000, the amount of attorney fees prayed for in each of the five complaints filed by BMS on behalf of NWA against Water Front. NWA relies on ORCP 67C(2), which provides:

  "Where a demand for judgment is for a stated amount of

money as damages, any judgment for money damages shall not exceed that amount."

Without deciding whether a prayer for a specific amount of attorney fees operates to limit the amount that a court may award to the prevailing party in an action,[4] ORCP 67C(2) limits the recovery of damages from an opposing party. It has no application here.

On appeal, affirmed; on cross-appeal, judgment modified to reduce balance owing Bloom, Marandas & Sly from $88,768.14 to $86,771.14 and affirmed as modified.

---

[4] Under ORCP 68C(2), a party is not required to allege a specific amount; a prayer for "reasonable" attorney fees is sufficient.